Robert DOUGLAS and Cheryl Douglas, parents and next friends of Kevin Douglas, decedent, Plaintiffs–Appellees,

v.

CITY AND COUNTY OF DENVER, State of Colorado, and Southwest Denver Recreational Center, Defendants–Appellants,

and

Colorado Trial Lawyers Association, Amicus Curiae.

No. 08CA0063.

Colorado Court of Appeals, Div. VI.

Nov. 13, 2008.

Inderwish & Bonifazi, P.C., John H. Inderwish, Daniele W. Bonifazi, Centennial, Colorado, for Plaintiffs–Appellees.

David R. Fine, City Attorney, Thomas Bigler, Assistant City Attorney, Denver, Colorado, for Defendants–Appellants.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge BERNARD J.

In this wrongful death action, defendants, the City and County of Denver and the Southwest Denver Recreational Center (SWDRC), appeal the trial court's order denying their motion to dismiss, on governmental immunity grounds, the complaint brought by plaintiffs, Robert Douglas and Cheryl Douglas, parents and next friend of the decedent, Kevin Douglas. We reverse and remand with directions to dismiss plaintiffs' complaint.

The decedent was bench pressing free weights at SWDRC when the barbell slipped from his hands and landed on his neck, resulting in fatal injuries. The decedent was twenty-one years old at the time of his death and had Down's syndrome. He was employed part-time at the SWDRC as an assistant custodian. On the day of his death, he was lifting weights by himself after he finished working at the SWDRC.

Plaintiffs brought this wrongful death action seeking damages as a result of the decedent's death. The complaint alleged that defendants breached their duty of care by failing to provide supervision in the SWDRC weight room, by failing to provide signage warning of the danger of using free weights without a spotter, and by negligently hiring, training, supervising, and managing their employees.

Defendants moved to dismiss plaintiffs' complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to 24–10–120, C.R.S.2008. They argued that plaintiffs' allegations of negligence did not fall within the CGIA provision waiving a public entity's immunity for a dangerous condition of a public building. See § 24–10–106(1)(c), C.R.S.2008.

In response, plaintiffs argued that a dangerous condition existed based on defendants' failure to provide signage warning of the specific danger that caused the death of the decedent. Plaintiffs also argued that defendants failed to supervise the decedent adequately and ignored the danger of allowing a person with Down's syndrome to lift heavy free weights without a spotter.

The trial court adopted, as its findings of fact and conclusions of law, the analysis and arguments made by plaintiffs in their response. Consequently, the court denied defendants' motion to dismiss. Defendants subsequently brought this interlocutory appeal pursuant to section 24–10–108, C.R.S. 2008.

Defendants contend that the trial court erred in determining that their immunity was waived under section 24–10–106(1)(c) for a dangerous condition of a public building. We agree.

■ The CGIA bars actions in tort against public entities, subject to certain provisions waiving immunity. *Medina v. State,* 35 P.3d 443, 453 (Colo.2001). Whether a claim is barred on grounds of immunity under the CGIA is a question of subject matter jurisdiction and is properly addressed under C.R.C.P. 12(b)(1). *Fogg v. Macaluso,* 892 P.2d 271, 276 (Colo.1995). The provisions waiving immunity are broadly construed in

the interest of compensating victims of governmental negligence. *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo.2000).

The plaintiff bears the burden to prove subject matter jurisdiction. *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001). If, as here, the underlying facts are undisputed, the trial court's jurisdictional determination is one of law, which we review de novo. *Medina*, 35 P.3d at 452; *see Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo.1993).

Section 24–10–106(1)(c) provides that "[s]overeign immunity is waived by a public entity in an action for injuries resulting from ... [a] dangerous condition of any public building."

As relevant here, "[d]angerous condition" is defined as

a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity ... in constructing or maintaining such facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate.

§ 24–10–103(1), C.R.S.2008.

Thus, immunity is waived under section 24–10–106(1)(c) if the alleged injuries occurred as a result of (1) the physical condition of a public facility or the use thereof; (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care; and (4) which is proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility. *Springer v. City & County of Denver*, 13 P.3d 794, 799 (Colo.2000).

In *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo.1992), *overruled in part on other grounds by Bertrand v. Board of County Commissioners*, 872 P.2d 223, 227 (Colo. 1994), the supreme court held that section 24–10–106(1)(c) "refers to an injury arising

from the state of the building itself or the use of a state of the building, but not to one arising from activities conducted within the building." *Jenks*, 826 P.2d at 827. The court then noted that an "[i]njury stemming from the use of a dangerous or defective physical condition of the building itself might include injury resulting from, for example, using a faulty elevator or falling down defective stairs." *Id.* The court concluded that, when a man shot Jenks in the hand in a courthouse corridor, Jenks's injury resulted not from a dangerous physical condition or defect of the courthouse, but from the intervening actions of a third party. *Id.* at 830.

The supreme court subsequently noted that the "linchpin of our 'use' inquiry under *Jenks* is that 'the statute refers to an injury arising from the state of the building itself or the use of a state of the building.' " *Walton v. State*, 968 P.2d 636, 645 (Colo.1998) (quoting *Jenks*, 826 P.2d at 827) (emphasis omitted). In *Walton*, the plaintiff's injuries arose from his use of an unsecured ladder on a slippery floor in a state university building to access a loft for maintenance. *Id.* The court held that the plaintiff's claim fell within the provision waiving immunity for a dangerous condition of a public building because "the university requested members of the public to engage in a use of the building connected with its maintenance, cleaning the loft, without providing a safe means for doing so." *Id.*

In *Padilla*, the supreme court reiterated its holding in *Walton* that the term "physical condition" includes, in addition to structural defects, physical conditions that a "governmental entity creates in ... constructing or maintaining a facility." *Padilla*, 25 P.3d at 1181. The court nevertheless determined that a school's use of a windowless storage closet as a seclusion room for a disabled child was not sufficiently connected to any negligence by the public entity in constructing or maintaining the public facility. *Id.* at 1183. The court noted that the plaintiff may have sufficiently alleged that "leaving a disabled and distraught child out of sight and reach in an unstable stroller" was an act of negligence. *Id.* However, the court reasoned that she did not demonstrate a sufficient connection between a use of the state of the build-

ing and a construction or maintenance activity or omission for which the school district was responsible. *Id.* (noting that plaintiff's theory only amounted to "a claim that the School District should have upgraded the design of the closet if it wished to use it as a 'time out' room"). It therefore concluded that this usage did not effectuate a waiver of immunity. *Id.*

Here, the trial court adopted the analysis set forth in plaintiffs' response as its findings of fact and conclusions of law. Thus, it agreed with plaintiffs that defendants waived their immunity by constructing the weight room without adequate signage; failing to observe, assist, or warn the decedent about the dangers of lifting heavy weights; and failing to monitor or supervise the weight room adequately.

The supreme court has indicated that, in order for a public entity's immunity to be waived under section 24–10–106(1)(c), the dangerous condition must be associated with the construction or maintenance of the building and stem from the use of a dangerous or defective physical condition of the building itself. *See Padilla,* 25 P.3d at 1183; *Jenks,* 826 P.2d at 827. Plaintiffs, however, did not allege or present any evidence that any of the equipment was defective or that a physical condition of the building itself contributed to the decedent's death. Rather, their allegations pertained to whether defendants should have posted warning signs or provided personnel to observe, assist, and warn about the dangers of lifting weights. Whether or not plaintiffs' allegations were sufficient to state a claim for negligence, they were inadequate to establish a waiver of defendants' immunity under the CGIA.

▪ Immunity is not waived for injuries that are sustained merely as a result of participating in an activity within a public building. *See Padilla,* 25 P.3d at 1182; *Jenks,* 826 P.2d at 827; *see also Curtis v. Hyland Hills Park & Recreation Dist.,* 179 P.3d 81, 84 (Colo.App.2007)(immunity not waived for injuries resulting from an "absence of an individual or system to regulate the spacing of visitors in rafts" in water park); *Sanchez v. Sch. Dist. 9–R,* 902 P.2d 450, 451 (Colo.App.1995) (immunity not

waived for injuries sustained by developmentally disabled student while performing gymnastic exercises without a spotter at school). The essence of plaintiffs' allegations was that the decedent was engaged in an activity within a public building, lifting free weights, which led to his death. No defect in the weight room's physical condition is alleged to have caused or contributed to the decedent's death. *See Booth v. Univ. of Colo.,* 64 P.3d 926, 930 (Colo.App.2002)(concluding that unsecured dry erase board "constituted an unreasonable risk to the health and safety of the public"), *aff'd,* 78 P.3d 1098 (Colo.2003); *Hendricks v. Weld County Sch. Dist.,* 895 P.2d 1120, 1123 (Colo.App.1995)(concluding that unpadded gymnasium wall, along with its use, constituted dangerous condition); *cf. Reynolds v. State Bd. for Cmty. Colls.,* 937 P.2d 774, 777 (Colo.App.1996)("[W]e conclude that a defective piece of equipment constitutes a dangerous or defective condition ... only if the equipment has been installed or annexed as a fixture in the building.").

▪ In addition, the failure to post warning signs or to supervise does not involve the use of a dangerous physical condition of the building that is associated with its maintenance. "Maintenance" is defined as

the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure. "Maintenance" does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.

§ 24–10–103(2.5), C.R.S.2008.

▪ Thus, under the circumstances presented here, the failure to post a sign is not a maintenance issue. *See Padilla,* 25 P.3d at 1183; *Jenks,* 826 P.2d at 827; *see also Willer v. City of Thornton,* 817 P.2d 514, 519 (Colo. 1991)(no waiver of immunity under the CGIA based on a failure to warn others of known dangerous conditions when the alleged defect is incorporated in the initial design); *Szymanski v. Dep't of Highways,* 776 P.2d 1124, 1125 (Colo.App.1989) (failure to post warning sign advising traffic that the intersection was dangerous was a design defect for which

immunity was not waived); *Mason v. Adams*, 961 P.2d 540, 546 (Colo.App.1997) (stating that "failure to post warning signs cannot serve as the basis for finding a dangerous condition" of a public highway).

Therefore, we conclude that the trial court erred in finding that defendants' immunity was waived under section 24–10–106(1)(c).

The order is reversed and the case is remanded to the trial court with directions to dismiss plaintiffs' complaint.

J. JONES and RULAND *, JJ., concur.